[See United States v. Anderson, Cases No. 14,-446, 14,447, 14,448, 14,449, 14,450, 14,451, and 14,452.]

## ANDERSON, (WEBB v.)

[See Webb v. Anderson, Case No. 17,318.]

## ANDES INS. CO., (CAHILL v.)

[See Cahill v. Andes Ins. Co., Case No. 2,289.]

## ANDES INS. CO., (MICHIGAN CENT. R. CO. v.)

[See Michigan Cent. R. Co. v. Andes Ins. Co., Case No. 9,526.]

## ANDES INS. CO., (YOUNG v.)

[See Young v. Andes Ins. Co., Case No. 18,151.]

## Case No. 366.

### The ANDOVER.

### [3 Blatchf. 303.][1]

Circuit Court, S. D. New York.    Sept., 1855.

CARRIERS—FREIGHT AND LIEN—ADMIRALTY JURISDICTION.

1. Where the printed form of a bill of lading of cotton contained, added at the bottom with a pen, the words, "contents and weight unknown," the freight to be paid at a certain rate per pound: *Held* that, although some figures were found in the margin of the bill of lading, apparently as the aggregate weight of the cotton, yet the shipper was bound to pay freight only on the actual weight of the cotton.

2. *Held*, also, that the vessel was liable in admiralty for the value of a part of the cotton, detained under a lien for the freight, after the shipper had offered to pay freight on the actual weight of the cotton, as soon as it should be ascertained.

In admiralty. This was a libel in rem, filed in the district court, against the ship An-

[1][Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

dover, to recover the value of ten bales of cotton. After a decree in the district court in favor of the libellant, the claimants appealed to this court.

George William Wright, for libellant.

Welcome R. Beebe, for claimants.

NELSON, Circuit Justice. The cotton in question in this case was part of a cargo shipped at New Orleans in the ship Andover, and consigned to the libellant at this port, he paying the freight. The bill of lading contained the clause, "contents and weight unknown." The freight was to be paid at a certain rate per pound, and, in the margin of the bill, the figures 29,782 were placed, apparently as the aggregate weight of the cotton.

On the arrival of the cotton, the consignees of the ship claimed that the figures in the margin of the bill of lading should govern in determining the weight, while the libellant insisted that, as the bill of lading said, "weight unknown," the cotton should be weighed and freight be paid accordingly. He offered to pay the freight on these terms, and tendered the amount, to be paid as soon as it could be ascertained. The ten bales in question were retained, under the ship's lien, for freight. The court below decreed for the libellant, for the value of the cotton, less the amount of the freight. [Opinion not reported, and not now accessible.]

There is nothing in the bill of lading indicating that the weight was agreed on between the master and the shipper, but the contrary. For, notwithstanding the memorandum in the margin, as to the supposed or real weight of the cotton, the master, as is apparent, required the insertion, at the foot of the bill, before he signed it, of the words, "contents and weight unknown," thereby excluding any inference that the owner was to be bound by the memorandum. This memorandum is not even referred to in the body of the bill, as the reference there is obviously to marks and numbers on bales, which marks and numbers are given in the margin, and not to the figures there, purporting to give the weight. But, if otherwise, it would not vary the result. The bill of lading is a printed form filled up, and the words, "contents and weight unknown," are added at the bottom with a pen, clearly indicating an intent on the part of the master not to be bound by any supposed ascertainment of the weight at the time by the shipper. Any other construction would be in disregard of the clear import of the instrument, and unjust to the master and his owner.

Decree affirmed.